# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHAEL H. EVANS, an individual, | Case No.: 2:09-cv-02401-RLH-LRL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss—#9) |
| AURORA LOAN SERVICES, LLC; QUALITY LOAN SERVICE CORP,; DOE Defendants I through X, inclusive; and ROE Corporations A through Z, inclusive, | |
| Defendants. | |

Before the Court is Defendants Quality Loan Services ("Quality") and Aurora Loan Services' ("Aurora") **Motion to Dismiss** (#9), filed December 30, 2009. The Court has also considered Plaintiff Michael E. Evans' Opposition (#22), filed February 19, 2010.

### BACKGROUND

This dispute stems from Evans' allegations that Defendants used unfair lending practices and committed fraudulent acts when processing his mortgage loan and reviewing his loan modification application. Evans alleges the following facts. In September 2004, Evans purchased the real property located at 11035 Calder Avenue in Las Vegas, Nevada. In April 2008, Evans

contacted Aurora to inquire about a possible loan modification. Aurora responded in writing explaining its home retention options. In November 2008, Evans missed a mortgage payment and then requested loan modification assistance from Aurora. The next month, Evans received his first denial letter from Aurora, which stated he was denied because he was "financially unable to afford the monthly payments." (Compl. ¶ 61.) However, Evans continued to correspond with Aurora and request further review of his loan modification application.

On March 31, 2009, a notice of default and election to sell was recorded on Evans' property. Despite this notice, Aurora continued to review Evans' loan modification application. In May, Evans received a second denial letter. However, a representative of Aurora told him to ignore the letter because Aurora was processing paperwork for a special forbearance agreement under which Evans would make trial payments of $1,196.60 from June 1 through August 1, and end with a payment of $22,276.15 on September 1. Evans executed the special forbearance agreement "with the understanding that Aurora was continuing to review and work on getting [him] assistance via permanent loan modification." (Compl. ¶ 76.) Evans made several trial payments pursuant to the special forbearance agreement and continued to check the loan modification status. In early November, Aurora sent Evans a third denial letter stating that his housing to income ratio was too high to qualify for a loan modification and a representative of Aurora told Evans the property was scheduled for sale on November 30.

On November 20, Evans filed suit against Defendants in the Eighth Judicial District Court for the State of Nevada. On December 21, Defendant Mortgage Electronic Registration Systems ("MERS") removed the case to this Court based on diversity of the parties. On December 30, Defendants Quality and Aurora joined in removal and filed a motion to dismiss.

In late 2009, the United States Judicial Panel on Multi-District Litigation ("Panel") consolidated numerous cases in which plaintiffs alleged MERS engaged in improper business practices when processing home loans. *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, MDL No. 09-2119-JAT ("MERS MDL"). The panel assigned Judge Teilborg in the

District of Arizona to oversee the MERS MDL.  The panel later added numerous cases from the District of Nevada to the MERS MDL, including the case at bar, but only as to those individual claims that "relate to the formation and/or operation of MERS."  The Panel further indicated that Judge Teilborg would separate and remand any unrelated claims back to the original district court. (Dkt. #24, Conditional Transfer Order, Feb. 16, 2010.)  In the interim, the Court stayed all proceedings in this case.  (Dkt. #23, Order, Feb. 23, 2010.)

On May 17, 2010, Judge Teilborg remanded various claims in each case.  (Dkt. #28, MDL Order.)  In this case, Evans' claims for unfair lending practices, wrongful foreclosure, adhesion contract, bad faith, fraud, unjust enrichment, injunctive relief, and declaratory relief were remanded from the MERS MDL.  (*Id.* 8)  On May 27, the parties stipulated to dismiss MERS from the case.  (Dkt. #31, Order.)  Aurora and Quality remain as Defendants.  Accordingly, the Court will now consider Defendants' Motion to Dismiss (#9), which was pending before the Court stayed the proceedings.  For the reasons discussed below, the Court grants Defendants' motion.

**DISCUSSION**

**I.      Legal Standard**

A court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "a short and plaint statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not require detailed factual allegations, it demands more than labels and conclusions or a formulaic recitation of the elements of a cause of action.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Factual allegations must be enough to rise above the speculative level.  *Twombly*, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to  state a claim to relief that is plausible on its face.  *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, a plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

**A.     Unfair Lending Practices**

Evans alleges Defendants violated Nevada's Unfair Lending Practices Statute, NRS 598D.100. This statute prohibits lenders from making loans "without determining, using commercially reasonable means or mechanisms, that the borrower has the ability to repay the home loan." NRS 598D.100(1)(b) (2007). Effective October 1, 2007, NRS 598D.100 was amended to make it an unfair lending practice to "make a home loan ... to a borrower ... without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to repay the loan." 2007 Nev. Stat. 2846 (amending NRS 598D.100(1)(b) (2003)). Prior to 2007, NRS 589D.100 only made it an unfair lending practice to "make a home loan to a borrower based solely upon the equity of the borrower in the home property without determining that the borrower has the ability to repay the home loan from other assets." NRS 598D.100(1)(b) (2003).

Assuming Evans fails to state a valid claim for unfair lending practices under NRS 598D.100. Evans asserts Defendants "included no evaluation of any commercially reasonable means or mechanism that would demonstrate the Plaintiff's capacity to repay." (Compl. ¶ 96.)

1  This allegation refers to the amended version of NRS 598D.100, which does not apply to his claim
2  because the loan transaction occurred in 2006.  Notwithstanding, Evans argues in his opposition
3  that Defendants still violated the 2003 standard.  However, this assertion also fails because Evans
4  alleges Defendants gave him the mortgage loan "based upon stated income with no verification."
5  (Compl. ¶ 97.)  Evans acknowledges Defendants used another means—stated income—rather than
6  his home equity in determining his ability to pay.  This procedure was not proscribed by the 2003
7  standard.  Accordingly, the Court dismisses this claim.

        **B.**      **Wrongful Foreclosure Under NRS 107.080**

9  In his complaint, Evans alleges wrongful foreclosure under NRS 107.080.  Nevada
10 recognizes tort claims for wrongful foreclosure where a homeowner alleges a lender wrongfully
11 exercised the power of sale and foreclosed upon their property when the homeowner was not in
12 default on the mortgage loan.  *See Collins v. Union Federal Sav. & Loan Ass'n*, 662 P.2d 610, 623
13 (Nev. 1983).  However, Evans does not dispute his delinquency on the mortgage payments.
14 Instead, he alleges Defendants violated the notice requirements of NRS 107.080.  Although this
15 statute does not provide homeowners with a private right of action for tort damages, it does allow a
16 court to void a trustee sale executed pursuant to NRS 107.080 if, *inter alia*, the person or entity that
17 conducted the sale does not substantially comply with the statute.  NRS 107.080(5)(a).  Thus, the
18 Court interprets Evans' claim as a request for a declaration that Defendants' substantial non-
19 compliance with NRS 107.080 resulted in an improper exercise of their power of sale.

20 Nevada law provides: "the notice of default and election to sell must describe the
21 deficiency in performance or payment."  NRS 107.080(3)(a).  Evans does not contend that the
22 notice of default failed to describe the deficiency in performance or payment.  Instead, he asserts
23 Defendants filed the notice of default, he made payments, and Defendants then violated this statute
24 by failing to file "an updated notice of default and election to sell which would have reflected the
25 amount paid by [Evans] after the notice was filed." (Compl. ¶ 185.)  However, this assertion fails
26 because NRS 107.080 does not require that a party seeking foreclosure file an updated notice of

1 default. Taking Evans' allegations as true, the Court cannot reasonably infer that Defendants are
2 liable for the alleged misconduct. *See Iqbal*, 129 S. Ct. at 1949. Because Evans does not allege
3 facts to demonstrate that Defendants failed to substantially comply with NRS 107.080, the Court
4 dismisses Evans' claim for wrongful foreclosure under NRS 107.080.

5     **C.**     **Adhesion Contract**

6     Evans alleges his loan modification contract was unconscionable, and as a result, he
7 asks the Court to void this purported adhesion contract. A court may to refuse to enforce a contract
8 clause as unconscionable when both procedural and substantive unconscionability are present.
9 *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004). "A clause is procedurally
10 unconscionable when a party lacks a meaningful opportunity to agree to the clause terms … as in
11 an adhesion contract." *Id.* An adhesion contract is defined as a "standardized contract form offered
12 to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the
13 consumer a realistic opportunity to bargain, and under such conditions that the consumer cannot
14 obtain the desired product or service except by acquiescing to the form of the contract." *Obstetrics*
15 *and Gynecologists Wixted, Flanagan, Robinson Ltd. v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985)
16 (internal citation omitted). However, Nevada does not preclude the enforcement of an adhesion
17 contract offered to a party with weaker bargaining power on a take it or leave it basis, so long as the
18 weaker party is plainly and clearly notified of the terms, gives "understanding consent," and the
19 terms fall within the weaker party's reasonable expectations. *Burch v. Second Jud. Dist. Ct. of Nev.*
20 *ex rel. County of Washoe*, 49 P.3d 647, 649 (Nev. 2002).

21     Here, Evans alleges the loan modification contract was unconscionable because he
22 did not have a realistic opportunity to bargain the terms. However, this allegation is conclusory
23 because he does not allege he lacked notice of the terms, did not consent, or the terms did not meet
24 his reasonable expectations. Moreover, Evans states he completed and returned the loan
25 modification package, indicating his consent to and notice of the modification's terms. (Compl. ¶
26 80.) Likewise, Evans demonstrates this notice by quoting language from the contract in his

6

complaint. (Compl. ¶ 203.) Because Evans's conclusory statements do not support unconscionability, the Court dismisses this claim.

**D.     Bad Faith**

In Nevada, courts have treated claims for bad faith as claims for breach of the covenant of good faith and fair dealing. *See Morris v. Bank of Am. Nevada*, 886 P.2d 454, 456 (Nev. 1994). Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). Damages may be awarded against a defendant that performs a contract in a manner that is unfaithful to the contract's purpose or where a defendant deliberately contravenes the intention and spirit of the contract thus denying plaintiff's justified expectations. *Morris*, 886 P.2d at 457; *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

Here, Evans claims Aurora acted in bad faith by leading him to believe he would be able to obtain a permanent loan modification. Evans alleges he made trial payments to facilitate a permanent modification, which he may not have otherwise done. However, Aurora eventually denied his modification application. Even assuming these assertions are true, Evans' claim fails because he has not alleged facts to support a valid, enforceable loan modification contract. A party cannot breach the covenant of good faith and fair dealing before a contract is formed. *See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("an implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct"). Thus, without a valid loan modification contract, Aurora could not have performed in a manner unfaithful to the contract's purpose. Accordingly, the Court dismisses Evans' claim for bad faith.

**E.     Fraud**

Under Nevada law, a fraud claim requires a party to prove each of the following elements: (1) a false representation; (2) knowledge or belief that the representation was false (or

7

knowledge that the defendant had an insufficient basis for making the representation); (3) intent to induce the Evans to consent to the contract's formation; (4) justifiable reliance upon the misrepresentation; and (5) damage resulting from such reliance. *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1017 (Nev. 2004). Fraud claims must meet a heightened pleading standard under Rule 9, which requires a party to state with particularity the circumstances constituting fraud. Fed. R. Civ. P. 9(b). Pleading fraud with particularity requires an account of the time, place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations. *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

Evans claims Aurora knew or should have known he would not qualify for a permanent loan modification but still required him to make trial payments. However, Evans' assertion fails for two reasons. First, Evans alleges he executed the special forbearance agreement requiring the trial payments "with the understanding that Aurora was continuing to review and work on getting [him] assistance via permanent loan modification." (Compl. ¶ 76.) This allegation demonstrates that Aurora did not make a false representation that it would approve a permanent loan modification. Second, Evans was already obligated to make payments on his original mortgage loan. Thus, Evans has not properly alleged damages to sustain a valid fraud claim. Accordingly, the Court dismisses Evans' fraud claim.

### F. Unjust Enrichment

Unjust enrichment is the "unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 701 (Nev. 1995). To state a valid claim for unjust enrichment, a plaintiff must allege: (1) plaintiff conferred a benefit on defendant, (2) defendant appreciated such benefit, and (3) defendant accepted and retained the benefit. *Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 613 (1992) (citation omitted).

Here, Evans alleges Aurora was unjustly enriched because it accepted the benefit of payments he made while Aurora evaluated his loan modification application. However, Evans fails

to state a valid claim because Evans was already obligated to make payments on his existing loan. Taking these allegations as true, Aurora was entitled to receive Evans' payments. Thus, the payments did not confer a benefit on Aurora. The Court therefore dismisses this claim.

### G. Injunctive & Declaratory Relief

Because the Court has dismissed each of Evans' remaining claims, he is not entitled to injunctive or declaratory relief. The Court therefore dismisses his petition for declaratory and injunctive relief .

### CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Quality Loan Services and Aurora Loan Services' Motion to Dismiss (#9) is GRANTED in its entirety.

Dated: June 18, 2010.

_____
ROGER L. HUNT
Chief United States District Judge